IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | CRIMINAL ACTION |
|---|---|
| v. | NO. 13-00599 |
| STEPHEN OLIMPI | |

PAPPERT, J.  February 7, 2019

### MEMORANDUM

On October 31, 2013, Stephen Olimpi was charged with two counts of using or inducing a child to pose for pornographic images in violation of 18 U.S.C. § 2251(a), one count of use of an interstate communication facility to entice a minor in violation of 18 U.S.C. § 2242(b), one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Olimpi pled guilty on September 26, 2016 to receipt of child pornography and possession of child pornography. *See* (Change of Plea Hr'g Tr., ECF No. 77; Guilty Plea Agreement, ECF No. 51). He was sentenced to 180 months incarceration, 10 years of supervised release, and a $200 special assessment on January 4, 2017. *See* (Judgment, ECF No. 59). The sentence fell within the advisory guideline range of 168 to 210 months incarceration.

Olimpi did not appeal his sentence. He instead filed a *pro se* Motion for Appointment of Counsel as well as a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF Nos. 73 and 75.) Olimpi contends that his counsel was ineffective, that his Eighth Amendment rights were violated and that he is entitled

1

to a downward departure from the guideline range. *See* (Mot., ECF No. 75). The Court denies both Motions.

I

28 U.S.C. § 2255 permits a prisoner sentenced by a federal court to move the court that imposed the sentence to "vacate, set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law or (4) the sentence is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a). The petitioner bears the burden of proving that his conviction is illegal. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Further, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Cleary*, 46 F.3d 307, 310 (3d Cir. 1995) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

The district court is given discretion in determining whether to hold an evidentiary hearing on a prisoner's motion under § 2255. *See Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). A district court may summarily dismiss a motion brought under § 2255 without a hearing where the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.'" *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (quoting *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992)). That is the case here.

II

As an initial matter, Olimpi's Motion is untimely. A § 2255 motion is subject to a one-year statute of limitations. *See* 28 U.S.C. § 2255(f). The limitations period runs

from the latest of the following: (1) the date on which the judgment becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of diligence. *Id*.

Olimpi does not contend that the government impeded his filing, his claims involve no newly recognized rights and there is no issue with respect to the discovery of his claims. This is a straightforward application of the statutory limitations period. The Court entered judgment on January 4, 2017. Olimpi had fourteen days to file an appeal. *See* Fed. R. App. P. 4(b)(1). He did not do so, his conviction became final on January 18, 2017 and the one-year limitations period expired on January 18, 2018.[1] Olimpi did not file his § 2255 motion until, at the earliest, June 25, 2018.[2]

Section 2255's statute of limitations is subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010). Equitable tolling is a remedy which should be invoked "only sparingly." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998). "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has

---

[1] If a defendant does not pursue a timely direct appeal, his conviction and sentence become final for purposes of a § 2255 motion on the date that the time for filing such an appeal expired. *See Kapral v. United States*, 166 F.3d 565, 577 (3d Cir. 1999).

[2] Olimpi improperly filed his § 2255 Motion on June 25, 2018. (ECF No. 72.) The Court ordered Olimpi to refile his Motion on the standard form on July 16, 2018. (ECF No. 74.) Olimpi refiled the Motion on August 6, 2018. (ECF No. 75.)

3

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Olimpi offers a number of excuses for the belated filing of his Motion, all of which are meritless and contradicted by the record. Olimpi states initially that his counsel did not tell him "about any appeal process or options that I had." (Mot. at 13.) During his guilty plea colloquy, Olimpi stated that he had discussed his case with counsel and did not need any more time to go over anything else. (Change of Plea Hr'g Tr. 18:11–20.) Olimpi signed a Guilty Plea Agreement which contained a waiver of his appellate rights, something the prosecutor went over in detail and Olimpi acknowledged. (*Id.* at 23:25–25:2.) He also stated that he signed the Agreement (along with the Acknowledgement of Rights Form) and that before signing the documents he read and discussed them with his lawyer. (*Id.* at 25:4–26:18.) The Court separately reviewed with Olimpi the limitations on his appellate rights and collateral proceedings and he confirmed again that he understood and agreed to them all. (*Id.* at 32:10–33:22.)

Olimpi then gets to the real reason for the failure to file his Motion within the limitations period—he didn't know he could file such a motion "until I opened up to a few other inmates recently that they told me about a 2255 and the appeal process and other things regarding my rights and claims." (Mot. at 13.) Obviously, belated advice from jailhouse counsel does not constitute the type of extraordinary circumstance excusing non-compliance with the statute's limitations period.

III

Even if Olimpi had timely filed his Motion, his Guilty Plea Agreement precludes the collateral relief sought. Criminal defendants "may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008). When a criminal defendant waives collateral challenge rights, the Court must evaluate the validity of the waiver by examining two factors: (1) whether the waiver was knowing and voluntary; and (2) whether enforcing the waiver "would work a miscarriage of justice." *Id.* at 237.

A

In determining whether a waiver is knowing and voluntary, the Court "must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the terms of any provision in a plea agreement waiving the right to appeal or collaterally attack the sentence." *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001) (citing Fed. R. Crim. P. 11(c)(6)). The Court did just that.

In his Guilty Plea Agreement, Olimpi agreed that "[i]n exchange for the promises made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law," subject to certain exceptions; all of which

5

(excluding one addressed *infra* in Section IV) do not apply. *See* (Guilty Plea Agreement ¶ 11).

Again, at his change of plea hearing, Olimpi acknowledged that he signed the Guilty Plea Agreement, which contained a waiver of the right to appeal or collaterally attack his sentence. (Change of Plea Hr'g Tr. 25:4–26:18.) Olimpi stated that before signing the Agreement he read it and discussed it with his attorney. (*Id*. at 25:7–16.) During his guilty plea colloquy, the Court separately reviewed his limited right to appeal and collateral proceedings and Olimpi confirmed again that he understood and agreed to them all. (*Id*. at 23:25–25:2, 32:10–33:22.) Olimpi's guilty plea, including the waiver of his rights to collaterally challenge his sentence, was knowing, voluntary and intelligently made. (*Id*. at 50:17–25.)

B

The Court must next consider whether enforcing this waiver would work a "miscarriage of justice." *Mabry*, 536 F.3d at 239. Courts should apply the miscarriage of justice exception to a collateral attack waiver "sparingly and without undue generosity." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). Nevertheless, the Court has an affirmative duty to examine the issue. *Mabry*, 536 F.3d at 237.

To determine whether enforcement would create a miscarriage of justice, courts should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result." *Id*. at 242–243 (quoting *United States v. Teeter*, 257 F.3d 14, 25–26 (1st Cir. 2001)).

The Third Circuit Court of Appeals has recognized the miscarriage of justice exception in a few limited circumstances, such as where constitutionally deficient lawyering prevented the defendant from understanding his plea, where a defendant should have been permitted to withdraw a guilty plea or where the waiver itself was the product of ineffective assistance of counsel. *United States v. Spivey*, 182 F. Supp. 3d 277, 280 (E.D. Pa. 2016) (citing *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007); *Wilson*, 429 F.3d at 458).

Pursuant to the terms of his Guilty Plea Agreement, Olimpi is not precluded from collaterally attacking his sentence on a claim of ineffective assistance of counsel, discussed *infra* in Section IV. He did, however, waive the right to bring other claims, such as those asserting violations of his Eighth Amendment rights or seeking a downward departure. *See* (Mot. 6). These claims do not fall within the "limited circumstances" recognized by the Court of Appeals and enforcing Olimpi's agreed to waiver will not work a miscarriage of justice.[3] *See Khattak*, 273 F.3d at 563.

IV

While Olimpi did not waive in his Guilty Plea Agreement his right to assert a claim of ineffective assistance of counsel, the claim is nonetheless meritless. A

---

[3] The claims are also frivolous. In ground two of his Motion, Olimpi alleges that he is entitled to relief because of the "eighth amendment, cruel & unusual punishment to send me to prison with my health issues / vs. home confinement." The Eighth Amendment, however, does not prohibit incarceration for inmates who need medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment instead requires that prison officials take "reasonable measures" to guarantee the safety of the inmates, which includes adequate medical care. *Id*. While Olimpi explains that he is receiving medical care, *see* (Mot. 7), he argues that his incarceration is an Eighth Amendment violation because of the severity of his medical issues, such as having uncontrollable bowels, difficulty sleeping and shortness of breath. *Id*. It isn't.
In ground three of his Motion, Olimpi requests the Court effect a "downward departure" in his sentence based on his medical condition. (Mot. 9.) The Court already sentenced Olimpi and rejected then the propriety of a downward departure based on his health.

7

defendant who claims to have been denied effective assistance must first show that counsel performed deficiently. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). This requires showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In other words, this element is satisfied if "counsel's performance fell outside the bounds of competent representation." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017). The defendant must also show that counsel's deficient performance prejudiced him. *Strickland*, 466 U.S. at 687. To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Buck*, 137 S. Ct. at 765 (quoting *Strickland*, 466 U.S. at 694).

First, Olimpi claims that his counsel was ineffective because he failed to "advise [him] that [he] had an appeal process at all" and "did not explain the legal process to [him] or the plea agreement." (Mot. 6.) The record belies such arguments. In his Guilty Plea Agreement, which he read and discussed with his lawyer before signing, *see* (Change of Plea Hr'g Tr. 25:4–26:18), Olimpi "voluntarily and expressly waive[d] all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution," with narrow exceptions. *See* (Guilty Plea Agreement ¶ 11). The Court also discussed with Olimpi the ramifications of pleading guilty, including that he was giving up his right to a jury trial, (*id.* at 28:24–25, 29:1) and the right to appeal his conviction (*id.* at 32:10–17), with limited exceptions, (*id.* at 33:10–19). Olimpi acknowledged that he understood all of this. (*Id.* at 32:10–34:18.) Finally, the Court again reviewed Olimpi's limited appellate rights at his sentencing. *See*

8

(Sentencing Hr'g Tr. 59:1–60:2). Olimpi was not prejudiced by his counsel's alleged failures to advise him because the appellate and legal processes were laid out in Olimpi's Guilty Plea Agreement and explained in detail at his change of plea hearing and sentencing.

Second, Olimpi claims that his counsel "did not advise [him] to the full sentence, he told [Olimpi that he] was pleading to a five year sentence 'only', not fifteen." (Mot. 6.) Such allegations cannot support an ineffective assistance claim where, as here, an adequate plea hearing was conducted. *See Shedrick*, 493 F.3d at 299; *see also United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (stating counsel was not ineffective for allegedly promising defendant a sentence of "no more than 71 months" where defendant was advised in open-court colloquy of potential maximum sentence and there were no other promises regarding sentence) and *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir. 2001) ("[A]ny alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when defendant was informed in open court that there was no guarantee as to sentence.").

At the hearing, the Assistant United States Attorney recited the specific charges against Olimpi and reiterated that Olimpi faced, among other things, a maximum punishment of 30 years incarceration with a mandatory 5 year minimum prison term, *see* (Change of Plea Hr'g Tr. 44:10–15), something also delineated in the Guilty Plea Agreement, *see* (Guilty Plea Agreement ¶ 3). Olimpi stated that he understood the maximum penalties that he faced in the case. *See* (Change of Plea Hr'g Tr. 44:20–23). The Court also reminded Olimpi that the sentencing guidelines were advisory and that the Court could impose a sentence that is either more severe or less severe than that

9

recommended by the guidelines.  (*Id*. at 45:3–6, 19–33.)  Moreover, Olimpi confirmed that no one (which would of course include his lawyer) had promised or led him to believe that he would receive a particular sentence.  (*Id*. at 46:4–6.)

Third, Olimpi argues that his counsel was ineffective because he "did not object to prosecutions inaccurate account of what happened and the plaintiff's story."  (Mot. 6.)  Olimpi claims that his counsel "knew [his] true story and said nothing and sat mute, and silent after [Olimpi] told him multiple times of inaccurate statements."  (*Id*.)  Again, Olimpi said something entirely different at his change of plea hearing; namely, he agreed to the government's recitation of the factual basis for his plea.  Specifically, the prosecutor recounted Olimpi's conduct and Olimpi agreed that she had correctly and accurately summarized the facts of the case. (Change of Plea Hr'g Tr. 38:9–42:13, 43:5–9.)  Olimpi also agreed that the government's version of the facts was indeed what took place, that he did everything the prosecutor said he did and that he fully admitted those facts.  (*Id*. at 43:5–17.)  Olimpi had the opportunity at that time to contest the factual assertions that he believed were inaccurate but declined to do so.  He is hard pressed now to show that he was prejudiced by his counsel's alleged failure to object to what he describes as undefined factual inaccuracies by the government.

V

When a district court denies a § 2255 motion, a petitioner may only appeal if the district court grants a certificate of appealability.  28 U.S.C. § 2253.  Because Olimpi has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not debate the dispositions of his claims, no certificate of

appealability shall issue. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.